

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F.#2009R01554

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

December 9, 2009

**BY HAND DELIVERY AND ECF**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

        Re:  United States v. Jeffrey Fishman
            Criminal Docket No. 08-485 (BMC)

Dear Judge Cogan:

        On August 27, 2008, the defendant pleaded guilty to a single-count information in the above-referenced case, charging him with conspiracy to commit wire fraud.  The defendant is scheduled to be sentenced before Your Honor on December 16, 2009.

        The government respectfully submits this letter in response to: (i) the Probation Department's conclusion in its Pre-Sentence Investigation Report ("PSR") that there should be no loss enhancement under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") associated with the defendant's kickback scheme; and (ii) the defendant's memorandum dated December 2, 2009 ("Def. Memo") seeking a non-Guidelines sentence.

I.   The Guidelines' Loss Enhancement

        The defendant pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 371.  His crime involved obtaining financial kickbacks in exchange for reducing the transactional security deposit due to his employer.  The Probation Department has concluded that there should be no loss enhancement because there was no "actual loss" associated with the defendant. (PSR ¶¶ 2, 16).  As explained below, however, the Probation Department was wrong in not applying the twelve-level loss enhancement under the Guidelines, which was stipulated to in the plea agreement dated August 27, 2008 (the "Plea Agreement").

Hon. Brian M. Cogan
December 9, 2009
Page 2


     A.   <u>The Defendant's Conduct and Intended Loss</u>

     In January 2002, the defendant was promoted to Chief Executive Officer of One Liberty Properties, Incorporated ("OLP"), a publicly-traded real estate investment trust firm. (PSR ¶ 3). As the highest-ranking officer of OLP, the defendant was in a "position of private trust" and was entrusted with making decisions that were in the best interests of OLP. (<u>See</u> PSR ¶ 22). Nonetheless, in 2002, the defendant engaged in an illegal kickback scheme to defraud OLP.

     In early 2002, the defendant negotiated a sale and leaseback transaction with the owners of the Pavilion Theatre in Brooklyn, New York. (PSR ¶ 6). By June 2002, the primary terms of the transaction, including the price and terms of the lease, had been agreed to and approved by OLP management. (PSR ¶ 7). After this agreement, but before consummation of the transaction, the defendant agreed with "John Doe," the primary negotiator for Pavilion Theatre, to reduce the approved security deposit that Pavilion Theatre would have to pay OLP by approximately $250,000 in exchange for a personal loan to the defendant in the amount of $450,000. (PSR ¶¶ 7-8). The defendant received additional payments totaling $390,000 from John Doe in connection with this and another transaction. (PSR ¶ 9). In 2003 and 2004, the defendant made a series of payments totaling $109,000 to John Doe in an attempt to repay some of the "loan" payments made to the defendant. (PSR ¶ 12).

     The defendant's actions caused OLP to receive $250,000 less in security deposit from Pavilion Theatre. Security deposits in real estate transactions are provided to protect the interests of the leasing party in the event there is a breach of contract. The security deposit that was agreed to and approved by OLP management was intended to protect its interests in the event of a contract breach by Pavilion Theatre. When the defendant reduced OLP's security deposit by $250,000 in exchange for monetary kickbacks from John Doe, the defendant knew that OLP would lose that money if there was a breach by Pavilion Theatre. Nonetheless, the defendant followed through with his scheme. He did not disclose this arrangement with John Doe to OLP.

     Under the Guidelines, the fact that OLP did not suffer any "actual loss" does not mean that the loss enhancement should not apply. For the purposes of the Sentencing Guidelines, "loss is the greater of actual loss or intended loss." U.S.S.G. §

Hon. Brian M. Cogan
December 9, 2009
Page 3

2B1.1, n.3(A). In this case, any loss enhancement would be based on intended loss, which means "the pecuniary harm that was intended to result from the offense." Id. § 2B1.1, n.3(A)(ii). The concept of "intended loss" focuses on a defendant's subjective expectation. See United States v. Confredo, 528 F.3d 143, 149-53 (2d Cir. 2008). The defendant was a sophisticated executive of a real estate investment firm and clearly understood the importance of the negotiated security deposit. By reducing the security deposit due to OLP by $250,000 for personal benefit, he knew that OLP would stand to lose at least $250,000 in the event of a breach of the agreement by Pavilion Theatre. The Probation Department erred in not considering intended loss in its calculations for determining the loss enhancement under the Guidelines. The defendant's decision to reduce the security deposit by $250,000 is a reasonable estimate of the intended loss to OLP. See U.S.S.G. § 2B1.1, n.3(C) ("The court need only make a reasonable estimate of loss."). Thus, the twelve-level loss enhancement should apply to the defendant's Guidelines calculation.

    B.    The Plea Agreement's Loss Stipulation

The defendant evidenced his intended loss to OLP by stipulating in his plea agreement to a loss of more than $200,000 (but less than $400,000). (Plea Agreement ¶ 2). This record alone provides a sufficient basis for applying the twelve-level loss enhancement.

Factual stipulations are governed by U.S.S.G. § 6B1.4 (policy statement). The Second Circuit has ruled that, pursuant to U.S.S.G. § 6B1.4, a district court may determine the loss amount for Guidelines purposes "based solely on the stipulation, as long as before making its finding it considered any other relevant information presented to it, including the PSR." United States v. Granik, 386 F.3d 404, 414 (2d Cir. 2004) (emphasis added); see also United States v. Glum, 2008 WL 928817, at *1 (2d Cir. Apr. 8, 2008) ("A district court's loss amount finding which is based on a stipulation does not constitute error, as long as the court considered any other relevant information presented to it, including the PSR, and the loss amount stipulation was knowing and voluntary."); Paulino v. United States, 964 F. Supp. 119, 126 (S.D.N.Y. 1997) (observing that

Hon. Brian M. Cogan
December 9, 2009
Page 4


"the cases hold that the plea agreement stipulation itself is sufficient" to provide an "evidentiary basis" for a sentencing enhancement).[1]

In addition, in his sentencing submission, the defendant does not argue that the Court should adopt the Probation Department's finding of no intended loss. By virtue of his stipulation, the defendant agreed to not challenge the intended loss amount and he has kept to his agreement. See, e.g., United States v. Newman, 148 F.3d 871, 876 (7th Cir. 1998) ("By stipulating to the conduct listed in this plea agreement, Newman conclusively admitted those facts and waived any subsequent challenge to them."); United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir. 1992); see also United States v. Gardner, 940 F.2d 587, 591 (10th Cir. 1991) ("The essence of a stipulation is an agreement.").

If this Court were to disregard the plea agreement stipulation, the government would be deprived of a significant benefit of its bargain. This might ultimately work to the detriment of defendants who may find the government less willing in future plea negotiations to accept such a stipulation in exchange for certain concessions. See United States v. Johnson, 410 F.3d 137, 153 (4th Cir. 2005); Granik, 386 F.3d at 412. ("We have . . . frequently noted the dangers of piecemeal non-enforcement of plea agreements . . . ."); see also United States v. Monzon, 359 F.3d 110, 117 (2d Cir. 2004) ("[T]o permit . . . a defendant to escape the fairly bargained-for consequences of her agreement with the government would 'render the plea bargaining process and the resulting agreement meaningless.'") (quoting United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993)).

---

[1] See also, e.g., United States v. Showalter, 569 F.3d 1150, 1161 (9th Cir. 2009) (noting that "Showalter's stipulation in the plea agreement that there were '10 or more victims' provided a sufficient basis for a 2-level enhancement"); United States v. Rosen, 409 F.3d 535, 550-52 (2d Cir. 2005) (district court properly adopted stipulated loss of more than $10,000, despite defendant's contention that no loss enhancement should apply because he fully paid his victim); Ortega v. United States, 897 F. Supp. 771, 782 (S.D.N.Y. 1995) (because defendant explicitly stipulated to a sentencing enhancement for intended loss, the enhancement was properly applied).

Hon. Brian M. Cogan
December 9, 2009
Page 5

      Moreover, the government in this case does not seek to be released from its own obligations under the plea agreement. (See Plea Agreement ¶¶ 2, 5). As a result of the plea bargaining that took place in this case, in what even the defendant described as a "rare feature" in a plea agreement, the government agreed not to oppose the defendant's motion for a below-Guidelines sentence based on his extraordinary efforts to accept responsibility and post-offense rehabilitation. (Plea Agreement ¶ 2). It is not surprising that this clause in the plea agreement is found immediately after the defendant's stipulation to the Guidelines calculation, which includes a twelve-level loss enhancement.

      Accordingly, the Court should decline to adopt the Probation Department's position concerning loss, and apply the twelve-level loss enhancement contained in the defendant's plea agreement.

II. The Defendant's Request for a Non-Guidelines Sentence

      The defendant requests a sentence of probation based on his extraordinary post-offense rehabilitation, his complete acceptance of responsibility and efforts to remediate the effects his wrongdoing, and his compelling personal circumstances. (Def. Memo. at 1). The government takes no position with regard to this motion.

      Respectfully submitted,

      BENTON J. CAMPBELL
      United States Attorney
      Eastern District of New York

By:     /s/
      Winston M. Paes
      Assistant U.S. Attorney
      (718) 254-6023

cc: Clerk of the Court (BMC) (By ECF)
    Steven R. Peikin, Esq. (By ECF and Email)
    Shayna Bryant, United States Probation Officer (By Email)